UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARGARET M. HEITMANN and ROBERT
F. DOUGHERTY,

      Plaintiffs,

   v.

COMPINSTALL, INC., FITZGERALD
INVESTIGATIONS, LLC, and PAUL
D. HEITMANN,

      Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-7306
(JEI/JS)

**OPINION**

**APPEARANCES:**

ARCHER & GREINER P.C.
By:  Vincent P. Sarubbi, Esq.
     Laura Descioli Link, Esq.
One Centennial Square
Haddonfield, New Jersey, 08033
     Counsel for Plaintiffs

BROWN & CONNERY LLP
By:  Christine P. O'Hearn, Esq.
     Michael Miles, Esq.
360 Haddon Avenue
P.O. Box 539
Westmont, New Jersey 08108
     Counsel for Defendant Compinstall, Inc.

PAUL D. HEITMANN
303 Mountain Road
Basking Ridge, New Jersey 07920
     Pro Se

**IRENAS**, Senior District Judge:

Pending before the Court is Defendant Compinstall, Inc.'s ("Compinstall") Motion to Dismiss Counts One and Four for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6) and Defendant Paul Heitmann's Motion to Dismiss the state-law claims in Counts One and Three.[1] For the reasons set forth below, Compinstall's Motion will be granted as to Count Four. The Court will decline to exercise subject-matter jurisdiction over the remaining counts, which contain state-law claims. Therefore Compinstall's Motion as to Count One, and Paul Heitmann's Motion as to Counts One and Three, will be denied as moot.

## I.

The facts outlined below, and relied upon by the Court when deciding the instant Motions, were alleged by the Plaintiffs in their Second Amended Complaint.

Plaintiff Margaret Heitmann ("Margaret") married Defendant Paul Heitmann ("Paul") in February, 1984. (Second Am. Compl. ¶ 10) Following nearly twenty-five years of marriage, and "[a]fter years of what [Margaret] considered mental cruelty, infliction of emotional distress and physical abuse," Margaret

---

[1] The Court exercises federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.  Venue is proper pursuant to § 1391(c).

and Paul divorced in June 2009. (Id. ¶ 11) A Property
Settlement Agreement ("PSA") provided that Paul pay Margaret
$16,000 per year for five years in alimony, commencing after the
sale of their marital home. (Id. ¶ 12) However, the PSA
provided that Paul's alimony obligations would end if Margaret
either remarried or cohabitated with a third party during the
five-year period. (Id. ¶ 13)

Sometime in August 2011, Paul hired Fitzgerald
Investigations, LLC ("Fitzgerald Investigations") to conduct an
investigation into Margaret's residence. (Id. ¶ 14; Ex. A at 1)[2]
To begin the investigation, Fitzgerald Investigations performed
a "motor vehicle look up" on August 25, 2011, which revealed
information about Margaret's Honda Civic. (Second Am. Compl. ¶
16; Ex. A at 2) On September 19, 2011, Fitzgerald
Investigations performed a second "motor vehicle look up" on
Plaintiff Robert Dougherty ("Dougherty"), a Cape May resident
identified by Paul as Margaret's fiancé. (Second Am. Compl. ¶
17; Ex. A at 2)

To actually perform the "motor vehicle look up," Fitzgerald
Investigations contacted Defendant Compinstall. (Second Am.
Compl. ¶ 19) Compinstall, without investigating why Fitzgerald
Investigations wanted such information, provided the make and

---

[2] References to "Ex. A" and "Ex. B" are to Exhibit A and Exhibit B,
enclosed and referred to specifically in the Second Amended Complaint.

3

model year of Margaret and Dougherty's vehicles from New Jersey Motor Vehicle Commission ("NJMVC") records, as well as the addresses to which those vehicles were registered. (Id. ¶¶ 19, 34; Ex. A at 2)

With the information obtained from Compinstall, Fitzgerald Investigations was able to locate Margaret's vehicle in the Morristown Memorial Hospital parking lot on October 6, 2011 and began tracking her daily activities. (Ex. B at 2) Between October 6 and November 14, Fitzgerald Investigations accounted for Margaret's daily whereabouts, recording her location and travel each day. (Second Am. Compl. ¶ 15; Ex. A, B) This included tracking her to the private parking lot at Morristown Memorial Hospital to the garage on Dougherty's property. (Second Am. Compl. ¶¶ 21-24, 26-28) The results of this investigation culminated in two reports that were apparently provided to Paul on October 17, 2011 and November 15, 2011. (Second Am. Compl. ¶ 15; Ex. A at 1; Ex. B at 1)

Margaret obtained the results of the initial investigation into her background as a result of a "Notice of Motion," which Paul served upon her on October 25, 2011. (Second Am. Compl. ¶ 25) This Notice of Motion was an effort to terminate Paul's alimony payments under the PSA, and is part of ongoing litigation in family court. (Id. ¶¶ 47-49) Upon discovering the tracking, Margaret was in "fear of her ex-husband," whom she

4

sought to keep out of her private affairs. (Second Am. Compl. ¶¶ 23, 33) Moreover, Margaret now challenges the conclusions reached in the Fitzgerald Investigations report; namely, she did not (and does not) live with Dougherty. (Id. ¶¶ 31-32)

Margaret and Dougherty filed a Complaint with this Court on November 27, 2012. The Plaintiffs amended the Complaint twice, culminating in the Second Amended Complaint filed on August 28, 2013. In it, the Plaintiffs allege various state-law torts and a violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2421-2425. Despite arguably obtaining valid service upon Fitzgerald Investigations on October 7, 2013,[3] Fitzgerald Investigations has neither appeared nor filed a responsive pleading or motion. (Vincent P. Sarubbi Cert., at ¶ 6, dkt. no. 29) Paul Heitmann now seeks dismissal of Count One (invasion of privacy) and Count Three (trespass), and Compinstall seeks

---

[3] On January 9, 2014, the Court ordered the Plaintiffs to serve Fitzgerald Investigations with a copy of the Second Amended Complaint, as no executed summons nor waiver of summons as to Fitzgerald Investigations had been filed. (Order at 5, dkt. no. 28) On January 16, the Plaintiffs' attorney certified that the Plaintiffs attempted to serve Fitzgerald Investigations in person on three occasions in August 2013. (Sarubbi Cert., at ¶ 4) After the Plaintiffs filed the Second Amended Complaint on August 28, 2013, the Plaintiffs sent a copy of the Second Amended Complaint to three different addresses for Fitzgerald Investigations via regular and certified mail on October 7, 2013. (Id. at ¶ 6) While the certified copy was returned unacknowledged to the Plaintiffs, the regular mail was not returned. (Id.) The Plaintiffs contend that their efforts constitute valid service under Federal Rule of Civil Procedure 4(e)(1), which permits service in accordance with state law in the jurisdiction where the district court is located. Under New Jersey Rule of Court 4:4-4(b)(1)(C), a plaintiff may obtain service by sending a copy of the summons and complaint via registered or certified mail and simultaneously by regular mail, after providing an affidavit that despite "diligent effort and inquiry," personal service cannot be made by any of the eight primary methods of service described in Rule 4:4-4(a).

dismissal of Count One (invasion of privacy) and Count Four (violation of the DPPA).

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

When considering a Rule 12(b)(6) motion, the reviewing court must accept as true all allegations in the complaint and view them in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In reviewing the allegations, a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Instead, the complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, the Court considers "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). A document forms the basis of a claim when it is "integral to or explicitly relied upon in the complaint." *Id.* (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

### III.

Compinstall's motion seeks dismissal of Count One, which alleges a common law claim for invasion of privacy, and Count Four, which alleges a violation of the DPPA. The Court first analyzes the DPPA claim and then turns to the jurisdictional matter that necessitates dismissal of the Plaintiffs' case.

### A.

Count Four alleges that Compinstall and Fitzgerald Investigations, in violation of the DPPA, misused the Plaintiffs' personal information contained in NJMVC records. (Second Am. Compl. ¶ 56)

Under the DPPA, a state department of motor vehicles is generally prohibited from disclosing or misusing personal

7

information held in its records. 18 U.S.C. § 2721(a); *Pichler v. UNITE*, 542 F.3d 380, 394-95 (3d Cir. 2008). Where a person "knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" by the DPPA, a plaintiff may bring a claim for relief. § 2724(a). There are, however, fourteen permissible purposes for disclosure enumerated by the DPPA. §§ 2721(b)(1)-(14). Most relevant among these exceptions from the DPPA's general prohibition on the release or misuse of personal information, § 2721(b)(4) permits disclosure of personal information:

> For use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including the service of process, investigation in anticipation of litigation, and the execution or enforcement of judgments and orders, or pursuant to an order of a Federal, State, or local court.

In addition, the DPPA provides for the resale and subsequent disclosure of personal information obtained by "authorized recipients" in § 2721(c), which explains that "[a]n authorized recipient of personal information (except a recipient under (b)(11) or (12)) may resell or redisclose the information only for a use permitted under subsection (b) (but not for uses under subsection (b)(11) or (12))."

Here, the Plaintiffs assert that Compinstall obtained their personal information and then disclosed it to Fitzgerald

8

Investigations "without authority or a permissible purpose to do so." (Second Am. Compl. ¶¶ 16-17) Specifically, Compinstall provided "look up" information containing the Plaintiffs' personal information to Fitzgerald Investigations. (Id. ¶ 19) This personal information was allegedly then used by Fitzgerald Investigations, acting on Paul's behalf, to determine whether Margaret was cohabitating or married to a third party, as this would release Paul from his alimony obligations. (Id. ¶¶ 12-18, 47)

As a threshold matter in determining Compinstall's liability, the Court first turns to Compinstall's actions. To obtain the Plaintiffs' "look up information," Compinstall obtained the information from the NJMVC (which held the relevant personal information) at the request of Fitzgerald Investigations. (Second Am. Compl. ¶ 19; Ex. A at 2) In this intermediary role, Compinstall acted on the NJMVC's behalf to fulfill Fitzgerald Investigations's request for the Plaintiffs' personal information. As alleged, Compinstall did not actually use the Plaintiffs' personal information in any manner; rather, Compinstall gleaned it from the NJMVC database and provided it to Fitzgerald Investigations.

Though the Third Circuit has not addressed the issue, other courts have held that intermediary resellers are "authorized recipients," and, under § 2721(c), may then resell personal

information for a permissible purpose authorized in § 2721(b).
*See*, *e.g.*, *Gracyk v. West Pub. Co.*, 660 F.3d 275, 279-81 (7th
Cir. 2011); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 338-39 (5th
Cir. 2010). Under this view, intermediaries acting as agents
fulfilling disclosure requests under § 2721(b) may properly
obtain and resell personal information without violating the
DPPA by virtue of the authorized recipient status granted in §
2721(c). *Gracyk*, 660 F.3d at 279; *see also Russell v.*
*ChoicePoint Svcs., Inc.*, 300 F.Supp.2d 450, 455-57 (E.D.La.
2004) (distinguishing between authorized recipients in § 2721(c)
and users who obtain personal information under a permissible
use in § 2721(b)).

In view of Compinstall's role in the alleged disclosure,
the Court finds that its provision of the Plaintiffs' personal
information is that of an authorized recipient, acting as an
intermediary for Fitzgerald Investigations. Fitzgerald
Investigations asked Compinstall to obtain personal information
from the NJMVC, which Compinstall then obtained and provided to
Fitzgerald Investigations. (Second Am. Compl. ¶ 19; Ex. A at 2)
Compinstall's liability for its actions therefore turns on
whether it had a legal duty to investigate what Fitzgerald
Investigations planned to do with this information. However,
the Court need not reach the question of whether the DPPA
imposes such a legal duty to investigate Fitzgerald

Investigations's purpose. Because the Court concludes that Fitzgerald Investigations's use of the Plaintiffs' personal information falls within a permissible purpose in § 2721(b), Compinstall's transfer of that personal information to Fitzgerald Investigations is permissible under § 2721(c).[4]

Returning to the relevant litigation exception enumerated in § 2721(b)(4), the Supreme Court has placed limits as to the permissible uses of personal information related to litigation. *Maracich v. Spears*, 133 S.Ct. 2191, 2202-04 (2013). In *Maracich*, the Court held that an attorney's solicitation of prospective clients for ongoing litigation fell outside the bounds of § 2721(b)(4). *Id.* at 2203. In considering the boundaries of the litigation exception, the Court explained that "[t]he examples [described in § 2721(b)(4)] suggest that the litigation exception has a limited scope to permit the use of highly restricted personal information when it serves an

---

[4] The contract between Compinstall and the State of New Jersey provided that, "[Compinstall] is strictly prohibited from using Commission records to conduct surveillance or to investigate or locate an individual for reasons not specifically related to motor vehicle activity, including but not limited to, divorce disputes, [sic] matchmaking services." (Pls. Opp'n Ex B at ¶ 10) Plaintiffs argue that (1) Compinstall violated this provision in its agreement with New Jersey, and (2) that this clause in the contract represents a decision by New Jersey to expand the privacy protections of the DPPA. As noted above, Compinstall did not "use" the data it obtained for any purpose other than to resell it to Fitzgerald Investigations. Moreover, any argument that New Jersey was expanding privacy rights beyond those provided by the DPPA would implicate state, rather than federal, law. While the genesis of this clause in the Compinstall-New Jersey contract is murky, a private contract between two parties is not a proper way for the State of New Jersey to legislate new privacy rights.

integral purpose in a particular legal proceeding." *Id.* at 2202. In a similar vein, "investigation in anticipation of litigation is best understood to allow background research to determine whether there is supportable theory for a complaint, a theory sufficient to avoid sanctions for filing a frivolous lawsuit, or to locate witnesses for deposition or trial testimony." *Id.* (internal quotation mark omitted).

The Plaintiffs' allegations demonstrate that Fitzgerald Investigations's use of the Plaintiffs' personal information falls under the litigation exception.[5] To reach this conclusion, the Court returns to the Plaintiffs' allegations that Paul and Margaret divorced on July 9, 2009. (Second Am. Compl. ¶ 11) The accompanying PSA ordered Paul to pay Margaret alimony of $16,000 per year for five years after the sale of their marital home on March 1, 2010. (<u>Id.</u> ¶ 12) Under the PSA, Paul's alimony payments would end "in the event of cohabitation of [Margaret] or in the event she was to marry." (<u>Id.</u> ¶ 13) In August 2011, Paul hired Fitzgerald Investigations to investigate Margaret's current residence. (<u>Id.</u> ¶ 14; Ex. A at 1) Investigation into Margaret's residence directly implicated Paul's right to terminate his alimony payments to Margaret, an

---

[5] Furthermore, accepting the Plaintiffs' assertion that they obtained valid service of process on Fitzgerald Investigations, this analysis also serves to dismiss the DPPA claim asserted against Fitzgerald Investigations as well.

issue that is the subject of ongoing litigation in family court. (Second Am. Compl. ¶¶ 47-49) While the Plaintiffs assert that Compinstall's information was "not used in litigation," the allegations demonstrate that the Fitzgerald Investigations reports, incorporating personal information obtained by Compinstall and provided to Fitzgerald Investigations, were used in the family court proceedings as the basis for Paul's efforts to terminate his alimony obligations.[6] (Id. ¶¶ 19, 35, 47-49)

In short, Compinstall simply responded to Fitzgerald Investigations's request for the Plaintiffs' personal information by providing the relevant personal information from the NJMVC. (Id. ¶¶ 16-17) Paul, "[b]ased primarily on the reports issued by [Fitzgerald Investigations], . . . filed the 'Notice of Motion' seeking to terminate the payments due under the PSA and seeks repayment of payments," in the ongoing family court action. (Id. ¶ 47) Because Fitzgerald Investigations used the Plaintiffs' personal information in anticipation of

---

[6] In their opposition brief, the Plaintiffs also enclose two emails between Thomas Fitzgerald of Fitzgerald Investigations and "Bob," apparently a representative of Compinstall, requesting the Plaintiffs' personal information held by the NJMVC but failing to explain how the information would be used. (See Pls. Opp'n Br. at Ex. C) The Plaintiffs contend that these emails indicate the Defendants lacked a permissible purpose for accessing their personal information. However, these emails were not included with the Second Amended Complaint, are not a matter of public record, nor are the emails explicitly relied upon in the Complaint. See Lum, 361 F.3d at 221 n.3. Moreover, the Court does not need to reach the question of whether Compinstall had a duty to investigate Fitzgerald Investigations's intended use of the Plaintiffs' personal information. In light of both concerns, the Court does not rely on these materials in considering the pending motions.

13

litigation, a permissible purpose under the statute,
Compinstall's disclosure to Fitzgerald Investigations was for a
permissible purpose and satisfies § 2721(c).  For this reason,
the Court will dismiss the Plaintiffs' DPPA claim.

**B.**

After dismissing the Plaintiffs' DPPA claim, the Court now
turns to whether it should exercise jurisdiction over the
remaining counts that contain only state-law claims.  In actions
in which a district court has original jurisdiction, 28 U.S.C. §
1367(a) grants the Court supplemental jurisdiction to consider
those claims that are part of the same case or controversy.

However, § 1367(c)(3) explains that a federal district
court "may decline to exercise supplemental jurisdiction over a
claim . . . if the district court has dismissed all claims over
which it has original jurisdiction."  The determination of
whether to retain or decline jurisdiction over state-law claims
is discretionary.  *Kach v. Hose*, 589 F.3d 626, 650 (3d Cir.
2009).  In considering whether to retain jurisdiction, a court
should consider "principles of judicial economy, convenience,
fairness, and comity."  *Anderson v. Wachovia Mortg. Corp.*, 621
F.3d 261, 283 (3d Cir. 2010).

Here, only the DPPA claim arises under the Constitution,
laws, or treaties of the United States.  *See* 28 U.S.C. § 1331.

Counts One, Two, and Three allege state-law claims of invasion of privacy, interference with a contract, and trespass. As a result of dismissing the DPPA claim, this Court has now dismissed all claims over which it has original jurisdiction.

Declining jurisdiction over the remaining claims best serves the principles described in *Anderson*. The parties have not yet answered the allegations in the Second Amended Complaint, nor has discovery commenced. Furthermore, the state-law claims pled in the remaining counts are directly related to the parties' proceedings in the family court, which center on the termination of Paul's alimony obligations. Indeed, the Second Amended Complaint explains that Margaret became aware of Fitzgerald Investigations' actions via a "Notice of Motion" that sought to terminate Paul's alimony obligations during the course of family court proceedings. (Second Am. Compl. ¶¶ 25, 47-49)

Having dismissed the DPPA claim, the only remaining claims concern invasion of privacy, interference with a contract, and trespass. The Court finds no circumstance to justify retaining jurisdiction in a case where no federal questions remain and where the core dispute between the parties centers on a prior divorce. Therefore, the Court will decline to exercise supplemental jurisdiction over the Plaintiffs' state-law claims.

**IV.**

For the reasons stated above, the Court will grant Compinstall's Motion to Dismiss as to Count Four, which also dismisses Count Four as to Fitzgerald Investigations. The Court declines jurisdiction over the remaining state-law claims, and will dismiss them without prejudice. Therefore, Compinstall's Motion to Dismiss Count One, and Paul Heitmann's Motion to Dismiss, are denied as moot. The Clerk of Court is directed to close this file. An appropriate Order accompanies this Opinion.

Date: 1/31/14

JOSEPH E. IRENAS, S.U.S.D.J.